**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

JERMAINE J. JOHNSON,                :

    Petitioner,                              :

vs.                                                      :          CA 07-0677-CG-C

PETER D. KEISLER, etc., et al.,       :

    Respondents.

**REPORT AND RECOMMENDATION**

Jermaine J. Johnson, a native and citizen of Jamaica ordered removed from the United States and presently being detained by the Immigration and Customs Enforcement ("ICE") arm of the United States Department of Homeland Security, has petitioned this Court for habeas relief pursuant to 28 U.S.C. § 2241.[1]  This matter has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). It is recommended that the instant petition be dismissed, without prejudice to being filed at a later date, because Johnson falls within

---

[1] Petitioner is in the actual and present physical custody of David O. Streiff, Warden of the Perry County Correctional Center in Uniontown, Alabama. *See Rumsfeld v. Padilla*, 542 U.S. 426, 447, 124 S.Ct. 2711, 2724, 159 L.Ed.2d 513 (2004) ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as [a] respondent and file the petition in the district of confinement.").

that class of aliens properly detained pursuant to 8 U.S.C. § 1231(a)(1)(C).

## FINDINGS OF FACT

1. Johnson is a native and citizen of Jamaica who entered the United States in 1990 without inspection. (Doc. 9, Exhibit 1, Declaration of Mohamed Hassan Khan, at ¶ 4) Petitioner has illegally resided in the United States since 1990. (Doc. 1, at ¶ 12 ("Petitioner, Jermaine J. Johnson is a native of and Citizen of Jamaica. He has been living in the United States illegally for some time."))

2. On December 6, 2006, petitioner was convicted of statutory rape; he was sentenced to six months incarceration and ten years probation upon release. (Doc. 9, Khan declar., at ¶ 5)

3. On February 27, 2007, Johnson was turned over to ICE agents at Riker's Island Jail in New York, New York. (*Id.* at ¶ 6) Petitioner was ordered removed from the United States to his native Jamaica on March 12, 2007. (Doc. 1, at ¶ 12; *see also* Doc. 1, Attached Order)

> Based upon the allegations set forth in the Notice of Intent to Issue a Final Administrative Removal Order and evidence contained in the administrative record, I, the undersigned Deciding Service Officer of the Immigration and Naturalization Service, make the following findings of fact and conclusions of law. I find that you are not a citizen or national of the United States and that you were not lawfully admitted for permanent residence. I further find that you have a final conviction of an

> aggravated felony as defined in section 101(a)(43) of the Act, 8 U.S.C. 1101(a)(43), and are ineligible for any relief from removal that the Attorney General may grant in an exercise of discretion. I further find that the administrative record establishe[s] by clear, convincing, and unequivocal evidence that you are deportable as an alien convicted of an aggravated felony pursuant to section 237(a)(2)(A)(iii) of the Act, 8 U.S.C. 1227(a)(2)(A)(iii). By the power and authority vested in the Attorney General and in me as the Attorney General's delegate under the laws of the United States, I find you deportable as charged and order that you be removed from the United States to <u>JAMAICA</u> or to any alternate country prescribed in section 241 of the Act.

(Doc. 1, Attached ORDER) This order, on its face, is a final administrative removal order. (*Id.*; *see also* Doc. 9, Khan declar., at ¶ 7 ("A Final Administrative Order of Removal was issued pursuant to 238(b) of the Immigration and Nationality Act on March 12, 2007."))[2]

    4.    A travel document request was made by ICE to the Consulate of Jamaica in New York on March 12, 2007. (*See* Doc. 9, Khan declar., at ¶ 8) The Jamaican Consulate advised ICE officials that there was "insufficient proof of citizenship for them to issue a document." (*Id.*) Based upon this communication, ICE officials contacted Johnson's mother on March 26, 2007, seeking her assistance in obtaining proof of citizenship or a birth certificate. (*Id.* at ¶ 9) Although petitioner's mother advised officials that she would

---

[2] There is nothing indicating that Johnson had a right to appeal this final order of removal or that he filed such an appeal. (*Compare* Doc. 1 *with* Doc. 9)

provide a birth certificate, in subsequent communications with her, on April 11 and 26, 2007, she indicated that she would have to obtain the birth certificate from Jamaica. (*Id*.)[3]

      5.      The Jamaican Consular Office interviewed Johnson by telephone on May 1, 2007; petitioner "failed to answer specific questions posed by the consular official with regard to citizenship." (*Id*. at ¶ 10) That office interviewed petitioner a second time on June 21, 2007. (*Id*. at ¶ 12)

> Petitioner's responses to questions were: "I don't know. I have nothing." Within fifteen seconds of questioning, Petitioner handed the receiver back to the deportation officer at which time the Jamaican Consulate official stated [petitioner was] being uncooperative. Petitioner's actions have demonstrated overt actions to prevent his removal from the United States.

(*Id*.)

      6.      The evidence is clear that on September 20, 2007, petitioner was served with a Form I-229(a) Warning for Failure to Deport[4] along with an instruction sheet regarding his requirement to assist ICE in the removal

---

[3] There has been no contact between ICE officials and petitioner's mother (or other family members) since April 26, 2007. (*Id*.)

[4] This form specifically notified Johnson that "[s]ection 241(a)(1)(C) [of the Immigration and Customs Enforcement Act] provides for the extension of the statutory removal period if the alien refuses, during the rem[oval process,] to [m]ake application in good faith, for a travel or other document necessary for the alien's removal or departure or conspires [to] prevent [t]he alien's removal subject to an order of removal." (Doc. 9, Exhibit 2, Warning for Failure to Deport)

process. (Doc. 9, Exhibit 2, Warning for Failure to Report & Instruction Sheet for Detainee Regarding Requirement to Assist in Removal)[5]

       7.     Petitioner filed this habeas corpus action in this Court on September 24, 2007, seeking his immediate release from custody under an order of supervision on the basis that he has remained in detention "in excess of the six month period described as reasonable by the [S]upreme Court." (Doc. 1, at 6, 7, 8 & 15) In his petition, Johnson wholly fails to describe any steps he has taken to assist the government in obtaining a travel document from Jamaica; instead, his entire focus is upon the government's inability to obtain a travel document for his return to Jamaica. (*Id*. at 4-5, 7-8 & 14)

> The Petitioner presently does not have any actions in any court contesting his order of removal and has asked that if the government could obtain a travel document from the government of Jamaica that he be deported to his native country. To date the government has not in any manner indicated that it has been instrumental in obtaining a travel document, yet the Petitioner is held in indefinite detention in excess of 6 months without being provided[,] in conformity with the provisions of the INA section 241.4(d) governing detention and removal of aliens ordered removed[,] . . . a 90 day custody review. The Petitioner contends that he is being held in indefinite detention in violation of the Due Process Clause of the United States

---

[5] While Khan has stated in his declaration that petitioner was served with copies of these forms on May 2, 2007, and again on June 22, 2007 (Doc. 9, Khan declar., at ¶ 11), the only copies provided to this Court are those served upon Johnson on September 20, 2007. In addition, Khan states that "Petitioner was served with a Notice of Failure to Comply [p]ursuant to 8 CFR 241.4(g)." (*Id*. at ¶ 13) However, a copy of this notice was not provided to the Court.

> Constitution and that the only remedy for this violation of the Petitioner's rights secured under the Constitution is immediate release from indefinite detention. The ICE has not stated that there has been a determination that the Petitioner is a flight risk, a danger to society or a threat to the national security of the United States. In addition, the Petitioner contends that there was not a determination that he has a mental illness that would preclude him from release on supervision and that therefore since the government has not been able to obtain a travel document in the 6 months that he has already been held in indefinite detention that there is no reasonable likelihood that his removal will be effectuated in the reasonably foreseeable future so as to mandate his continued detention pursuant to 241.4(e).
>
> . . .
>
> To date the government has not been able to obtain a travel document from the government of Jamaica to return the Petitioner to Jamaica and neither has the government specified that a travel document will be issued by the Jamaican government in the reasonably foreseeable future to effectuate the Petitioner's removal from the United States.
>
> . . .
>
> The petitioner is eligible for release on bond while the government continues whatever process necessary to obtain a travel document to effectuate the Petitioner's removal.

(*Id.*)

## CONCLUSIONS OF LAW

1.  In *Zadvydas v. Davis*, 533 U.S. 678, 688, 121 S.Ct. 2491, 2498, 150 L.Ed.2d 653 (2001), the Supreme Court determined that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."

2.  The Supreme Court held in *Zadvydas* that the post-removal-period detention statute, 8 U.S.C. § 1231, "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." 533 U.S. at 689, 121 S.Ct. at 2498.

3.  8 U.S.C. § 1231 reads, in relevant part, as follows:

**(a) Detention, release, and removal of aliens ordered removed**

**(1) Removal period**

**(A) In general**

Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").

7

>    **(B)    Beginning of period**
>
>    The removal period begins on the **latest** of the following:
>
>    >    **(i)** The date the order of removal becomes administratively final.
>    >
>    >    **(ii)** If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>    >
>    >    **(iii)** If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.
>
>    **(C)    Suspension of period**
>
>    The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.
>
>    **(2)    Detention**
>
>    During the removal period, the Attorney General shall detain the alien. Under no circumstances during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

*Id*. (emphasis supplied). The Supreme Court in *Zadvydas* concluded that six

8

months represents a presumptively reasonable period of time to detain a removable alien awaiting deportation pursuant to the provisions of this statute. 533 U.S. at 701, 121 S.Ct. at 2505 ("While an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months. . . . Consequently, for the sake of uniform administration in the federal courts, we recognize that period. After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."); *see Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002)

("Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period plus 90 days thereafter.").

4. In *Akinwale*, the Eleventh Circuit determined that the six-month detention period recognized by the Supreme Court "must have expired" at the time a petitioner's § 2241 petition is filed "in order to state a claim under *Zadvydas*." 287 F.3d at 1052; *see also id.* ("[I]n order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.").

5. In this case, petitioner contends that his presumptively-reasonable six-month period of detention under *Zadvydas* had expired as of the date he filed this action, September 24, 2007 (Doc. 1), inasmuch as his removal order became administratively final on March 12, 2007. The federal respondents make no argument to the contrary. (*See* Doc. 9)[6] Accordingly, petitioner argues that since there is no significant likelihood of removal in the reasonably foreseeable future he is entitled to immediate release under an order of supervision.

---

[6] Absent tolling, petitioner's six-month period of detention under *Zadvydas* would have expired on or about September 12, 2007.

6.      In making this argument, petitioner ignores the tolling provision contained in § 1231(a)(1)(C), which specifically provides that "[t]he removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C); *see also Rodriguez v. Gonzales*, 2007 WL 1655604, *7 (N.D. Fla. 2007 ("It appears in this case, that Petitioner's six-month period of removal pursuant to *Zadvydas* has been tolled as permitted by 8 U.S.C. § 1231(a)(1)(C). In other words, the period of time by which Petitioner is found to be non-cooperative, has tolled the six months of presumptively reasonable period of time for removal as announced in *Zadvydas*."); *Jian Bin Tang v. Gonzales*, 2006 WL 3618325, *2 (N.D. Fla. 2006) ("[T]he Court agrees with the Magistrate [Judge] that the six-month period of removal pursuant to *Zadvydas* has been tolled as permitted by 8 U.S.C. § 1231(a)(1)(C), and that continued detention is authorized."); *see Akinwale, supra*, 287 F.3d at 1052 n.4 (citing to § 1231(a)(1)(C) and indicating that this section can toll the removal period where the alien acts to prevent his removal such as by filing a motion for a stay of removal); *Baghdasaryan v.*

*Chertoff*, 2007 WL 2127724, *1 (N.D. Ga. 2007) ("When an alien acts to prevent his or her removal, the government may continue to detain the alien. *See* 8 U.S.C. § 1231(a)(1)(C); *Akinwale v. Ashcroft*, 287 F.3d 1050 (11th Cir. 2002)."). Although some courts have questioned whether *Zadvydas* has any application to the constitutionality of § 1231(a)(1)(C), *see, e.g., Pelich v. Immigration & Naturalization Service*, 329 F.3d 1057 (9th Cir. 2003); *Powell v. Ashcroft*, 194 F.Supp.2d 209 (E.D. N.Y. 2002), since the Supreme Court was concerned only with the constitutionality of § 1231(a)(6) in that case, *see Brown v. Gonzalez*, 2007 WL 2790585, *8 (N.D. Fla. 2007), the undersigned recommends that this Court find, consistent with cases referenced above, that § 1231(a)(1)(C) permits tolling of the six-month presumptively reasonable period of time for removal announced in *Zadvydas*. *Rodriguez, supra*, at *7; *Tang, supra,* at *2; *see Akinwale, supra*, 287 F.3d at 1052 n.4; *Baghdasaryan, supra*, at *1.

7. The question for this Court becomes whether petitioner has acted in a manner which has hindered or prevented his removal so that the six-month presumptively reasonable period of time for removal set forth in *Zadvydas* should be tolled under § 1231(a)(1)(C). It is clear from the evidence presented by the federal respondents that Johnson has failed to cooperate with the

Jamaican Consular Office when asked questions about his citizenship and that neither petitioner nor his family (specifically, his mother) has supplied ICE officials with a Jamaican birth certificate or proof of Jamaican citizenship though they are well aware of the Jamaican Consulate's refusal to issue a travel document in absence of sufficient proof of citizenship. The petitioner has made no argument to the contrary. (*See* Doc. 1) Stated differently, Johnson has not come forward with any evidence establishing "that he has made any effort to assist in the removal process or that he has done all that he [is] capable of doing in assisting ICE." *Rodriguez, supra*, at *7.

        8.      Based upon the foregoing, the Magistrate Judge recommends that the Court find that Johnson "has failed to demonstrate that he is not hindering his removal and, therefore, he cannot complain about the delay in effecting his removal since he must be found to be the cause of the delay." *Rodriguez, supra; cf. Lema v. Immigration & Naturalization Serv.*, 341 F.3d 853, 857 (9th Cir. 2003) ("We conclude that 8 U.S.C. § 1231(a)(1)(C), interpreted mindful of the concerns underlying *Zadvydas* and *Pelich*, authorizes the INS's continued detention of a removable alien so long as the alien fails to cooperate fully and honestly with officials to obtain travel documents."); *Pelich, supra*, 329 F.3d at 1060 ("The risk of indefinite

detention that motivated the Supreme Court's statutory interpretation in *Zadvydas* does not exist when an alien is the cause of his own detention. Unlike the aliens in *Zadvydas*, Pelich has the 'keys [to his freedom] in his pocket' and could likely effectuate his removal by providing the information requested by the INS."); *Candela v. Gonzales*, 2007 WL 1834891, *3 (S.D. Ala. 2007) ("The evidence shows that Candela has obstructed the removal process and that his actions have led to his continued detention. As such, Petitioner cannot prove that 'there is no significant likelihood of removal in the reasonably foreseeable future.' . . . Candela's continued detention is not improper under 8 U.S.C. § 1231(a)(1)(C)."). The six-month time period for removal announced in *Zadvydas* has been tolled pursuant to 8 U.S.C. § 1231(a)(1)(C).

## CONCLUSION

For these reasons, the undersigned recommends that this Court dismiss, without prejudice, Jermaine J. Johnson's habeas corpus petition filed pursuant to 28 U.S.C. § 2241. Johnson has acted to hinder his removal from the United States. Therefore, his continued detention is authorized by 8 U.S.C. §

1231(a)(1)(C).

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 21st day of November, 2007.

        s/WILLIAM E. CASSADY
        **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                                                            s/WILLIAM E. CASSADY
                                                            UNITED STATES MAGISTRATE JUDGE